UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PAUL SATKOWIAK, and
PRIZZA SATKOWIAK

                Plaintiffs,                        Case No. 1:24-cv-11229

v.                                          Honorable Thomas L. Ludington
                                             United States District Judge

BRIAN MARSHALL, and JUSTIN SMITH

                Defendants.

_____/

## OPINION AND ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS IN PART, (2) DENYING DEFENDANTS' MOTION TO DISMISS IN PART, (3) DISMISSING STATE LAW CLAIMS, (4) DISMISSING FEDERAL OFFICIAL CAPACITY CLAIMS, AND (5) *SUA SPONTE* DISMISSING PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF FOR LACK OF ARTICLE III STANDING

On April 11, 2024, Defendants Brian Marshall and Justin Smith—environmental quality analysts with Michigan's Department of Environment, Great Lakes, and Energy—"inspected" Plaintiffs Paul and Prizza Satkowiak's property for compliance with state environmental laws governing wetland conservation and protection. But Plaintiffs contend this inspection occurred without a warrant or their consent, and accordingly sued Defendants for depriving them of their Fourth Amendment rights, violating the Michigan constitution, and trespassing on their property.

Defendants filed a joint motion to dismiss all claims in June 2024. As explained below, Defendants' motion will be granted in large part. Plaintiffs stipulated to dismissing their state claims without prejudice. Eleventh Amendment sovereign immunity precludes this Court's jurisdiction to consider Plaintiffs' federal Fourth Amendment claim against Defendants in their official capacities. But this Court has jurisdiction over this Fourth Amendment claim against Defendants in their individual capacities, and Plaintiffs' Complaint contains enough factual

allegations to survive Defendants Rule 12(b)(6) motion to dismiss. Defendants argue to the contrary that (1) they never conducted a Fourth Amendment "search," (2) if they did, an exception to the warrant requirement applies, rending the search reasonable, and (3) even if unreasonable, they are entitled to qualified immunity. But all three tiers of Defendants' argument rest on their own version of the relevant facts. At bottom, discovery is needed to assess whether Defendants' April 11, 2024 "inspection" was—as alleged—unconstitutional.

## I.

Husband-and-wife Plaintiffs Paul and Prizza Stakowiak own property located at 2925 North Huron Road in Pinconning, Michigan (the "Property"), which contains both regulated and nonregulated "potential" wetlands. *See* ECF Nos. 1 at PageID.1; 1-1 at PageID.6, 8; 7-2 at PageID.61; 7-3 at PageID.67. Defendants Brian Marshall and Justin Smith worked as Environmental Quality Analysts for the Michigan Department of Environment, Great Lakes, and Energy (EGLE), in its Water Resources Division (WRD). *See* ECF Nos. 1 at PageID.1; 7-2 at PageID.59; 7-3 at PageID.66.

At some unknown time, for some unknown reason, some unknown person filed a complaint with EGLE that unknown aspects of Plaintiffs' Property violated unknown provisions of Part 303 of Michigan's Natural Resources and Environmental Protection Act (NREPA), which generally governs wetland protection and conservation. *See* MICH. COMP. LAWS §§ 324.30304 (prohibiting persons from depositing fill material in wetlands, drudging and removing soil or minerals from wetlands, draining wetlands, and "construct[ing], operat[ing], or maintain[ing] any use or development in a wetlands" without a permit); *see also* 324.30306–07, 324.30311 (permit information and process). This is not the first time Plaintiffs have been suspected of violating the NREPA by polluting wetlands on their property. Indeed, in April 2023, EGLE and the Michigan

Attorney General sued Plaintiffs in state court for dredging and draining surface water from wetlands located on separate—but nearby—property in Mount Forest Township, Michigan, alleging Plaintiffs "filled nearly five acres" of the wetlands on that property with "harmful sugar beet production waste." *See Satkowiak v. McClain*, No. 1:23-CV-13096, 2024 WL 3448445, at *1 (E.D. Mich. July 16, 2024), *aff'd*, No. 24-1600, 2024 WL 5088685 (6th Cir. Dec. 12, 2024). It is unclear, at this juncture, whether the ongoing state case against Plaintiffs for alleged pollution of their Mount Forest Township property is related to or prompted the instant internal EGLE complaint concerning Plaintiffs' North Huron Road Property.

Regardless, on April 11, 2024, Defendants Marshall and Smith inspected Plaintiffs' North Huron Road Property for compliance with Part 303 of the NREPA. *See* ECF No. 1-1 at PageID.6. Three weeks later, Defendant Smith sent Plaintiffs a letter informing them about the inspection, noting that Defendants observed no NREPA violations but that "a regulated wetland was observed within the undeveloped area located within the south portion" of Plaintiff's Property such that Plaintiffs *may* need to obtain permits if they "wish" to further develop on the southern portion of their land. *Id.*

This federal lawsuit followed. Less than one week after receiving Defendant Smith's letter, Plaintiffs sued Defendants for violating state and federal law. ECF No. 1. In Count I, Plaintiffs allege Defendants—in both their individual and official capacities—deprived Plaintiffs of their Fourth Amendment rights by inspecting their property without a warrant or their consent, in violation of 42 U.S.C. § 1983. *Id.* at PageID.2–3. In Count II, Plaintiffs pursue a "*Bauserman* claim" and allege Defendants violated parallel provisions of the Michigan Constitution. *Id.* at PageID.3–4 (citing Article 1, Section 11 of the Michigan Constitution, which prohibits warrantless searches and seizures). And, in Count III, Plaintiffs allege Defendants trespassed. *Id.* at PageID.4.

Plaintiffs seek several types of relief and, confusingly, do not assign their requests to particular counts or claims. Plaintiffs broadly seek (1) a declaration that Defendants trespassed on their property and violated both the United States and Michigan Constitutions, (2) an injunction "halt[ing] any further unannounced and unasked-for inspection(s) . . . [and] trespass(es)," (3) an injunction "command[ing] Defendants to destroy all notes, records, photographs, and/or any other catalogued information generated at" the April 11, 2024 inspection, (4) monetary damages, and (5) attorney's fees. *Id.* at PageID.4–5.

In June 2024, Defendants filed a joint motion to dismiss all claims. ECF No. 7. Plaintiffs contest dismissal of their federal Fourth Amendment claim (Count I), but "stipulate" to the dismissal of their state claims (Counts II and III) without prejudice. *See* ECF No. 9 at PageID.115 (agreeing this Court should decline supplemental jurisdiction over the state law claims, which "admittedly raise novel and complex issues"). Accordingly, Defendants' Motion to Dismiss will be granted to the extent it seeks dismissal of Plaintiff's state law claims, Counts II and III will be dismissed without prejudice, and this Court will turn to analyze the propriety of Plaintiff's federal Fourth Amendment claim.

Defendants seek to dismiss Plaintiffs' Fourth Amendment claim for two reasons. First, Defendants argue that Eleventh Amendment sovereign immunity deprives this Court of subject matter jurisdiction to consider Plaintiffs' Fourth Amendment claim against Defendants in their *official capacities*. ECF No. 7 at PageID.39–46 (citing FED. R. CIV. P. 12(b)(1)). Second, to the extent Plaintiffs also sue Defendants in their *individual* capacities, Defendants argue that Plaintiffs fail to state a viable Fourth Amendment claim. *Id.* at PageID.47–50 (citing FED. R. CIV. P. 12(b)(6)). Each of Defendants' arguments will be addressed in turn.

## II.

Defendants first seek dismissal of Plaintiff's official capacity claims under Civil Rule 12(b)(1) for lack of jurisdiction. ECF No. 7 at PageID.38–46. Because official capacity claims against state officials are properly construed as claims against the state itself, Defendants are entitled to Eleventh Amendment sovereign immunity on Plaintiffs' official capacity claims. And, because the *Ex parte Young* and other immunity exceptions do not apply, this Court lacks jurisdiction to consider Plaintiffs' Fourth Amendment claim against Defendants in their official capacities.

## A.

Motions to dismiss for lack of subject matter jurisdiction under Civil Rule 12(b)(1) "fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *see also Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). A *facial* attack challenges "the sufficiency of the pleading itself" and, when asserted, reviewing courts accordingly "take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Ritchie*, 15 F.3d at 598 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)). "A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Id*. (emphasis in original). A reviewing court need not presume the truth of a plaintiff's factual allegations and is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. Under both categories, the plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Cartwright*, 751 F.3d at 760. In their Motion to Dismiss, Defendants assert a facial attack and argue that, even assuming all facts within Plaintiff's Complaint are true,

Plaintiff's official-capacity claims are barred by Eleventh Amendment sovereign immunity. ECF No. 7 at PageID.41.

"After independence, the [s]tates considered themselves fully sovereign nations." *Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 237 (2019). "An integral component" of this historic state sovereignty was "'immunity from private suits.'" *Id.* (quoting *Fed. Mar. Comm'n v. S.C. Ports Auth.*, 535 U.S. 743, 751–52 (2002)). "That said, by ratifying the federal Constitution, the States consented to federal court jurisdiction over them for certain suits." *Ladd v. Marchbanks*, 971 F.3d 574, 577 (6th Cir. 2020). States specifically consented to federal jurisdiction over suits brought by *other states*, *see* U.S. CONST. art. III, § 2, and the *federal government* itself. *See Hyatt*, 587 U.S. at 231.  In 1793, the Supreme Court held that, by ratifying Article III, states also consented to federal jurisdiction over civil suits brought by private citizens. *Chisholm v. Georgia*, 2 U.S. 419, 420 (1793). But "[t]hat decision precipitated an immediate furor and uproar across the country. Congress and the States accordingly acted swiftly to remedy the Court's blunder by drafting and ratifying the Eleventh Amendment." *Hyatt*, 587 U.S. at 242–43 (quotation marks and citations omitted). That Amendment makes clear: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

Thus, the Eleventh Amendment "deprives federal courts of subject-matter jurisdiction" when a private plaintiff sues a state, or a state employee in their official capacity. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (noting a suit against a state employee in their official capacity is a "suit against the [s]tate itself"); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Indeed, Eleventh Amendment sovereign immunity is a "true

jurisdictional bar" to suit and accordingly "must be decided before the merits." *Russell*, 784 F.3d at 1046; *accord Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018); *Ladd v. Marchbanks*, 971 F.3d 574, 577 (6th Cir. 2020). But Congress can expressly abrogate state sovereign immunity, and the state itself can waive it or otherwise consent to suit. *See Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016).

Here, Defendants—EGLE employees—are state officials, so Plaintiffs' official-capacity claims against them are properly construed against the State of Michigan itself. *See Grant v. U.S. Env't Prot. Agency*, No. 1:22-CV-0186, 2023 WL 5016608, at *17 (W.D. Mich. June 1, 2023), *report and recommendation adopted sub nom. Grant v. United States*, No. 1:22-CV-186, 2023 WL 6304911 (W.D. Mich. Sept. 28, 2023) (classifying EGLE and its employees as "arms of the state" of Michigan for sovereign immunity purposes). Michigan has not waived its sovereign immunity. *See Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (noting states can waive sovereign immunity (1) through legislation, (2) by removing an action from state to federal court, or (3) by appearing without objection and defending a case on the merits). Nor has Congress abrogated it. *Kerchen v. Univ. of Michigan*, 100 F.4th 751, 761 (6th Cir. 2024) ("Congress has not abrogated Michigan's immunity to suit under § 1983 claims."). Accordingly, this Court lacks jurisdiction to consider Plaintiffs' official-capacity claims to the extent they seek *monetary damages*. Plaintiffs do not disagree, and instead argue that *Ex parte Young*, 209 U.S. 123 (1908) allows this Court to consider their official-capacity claims to the extent they seek "only equitable relief." ECF No. 9 at PageID.104.

## B.

The Supreme Court's decision in *Ex parte Young* stemmed from Minnesota legislation that approved certain railroad rates and authorized criminal penalties against any railroad

employee who charged customers in excess of these approved rates. 209 U.S. at 127–29. A group of railroad company shareholders sued, relevantly, the Minnesota Attorney General and sought an injunction precluding him from enforcing this newly-enacted state legislation, which plaintiffs contended deprived them of federal Fourteenth Amendment due process. *Id.* at 129–32. Lower courts concluded the Minnesota law was unconstitutional and granted the requested injunction. *See id.* The Supreme Court affirmed on appeal. Although the Minnesota Attorney General was undoubtedly a state employee, the Supreme Court concluded that Eleventh Amendment sovereign immunity did not shield him from the plaintiffs' prospective injunction and did not divest federal jurisdiction. *See id.* at 155-56. Indeed, the Supreme Court held that "individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to . . . enforce [such laws] against parties [in] violati[on of] the Federal Constitution, may be enjoined by a Federal Court of equity from such action." *Id.*

This primary *Ex parte Young* holding rests on the now well-established legal "fiction" that "states cannot authorize unconstitutional acts." *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1040 (6th Cir. 2022). Only individuals can. And, when a state official authorizes or enforces an act in violation of the federal constitution, he is "stripped of his official character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Ex parte Young*, 209 U.S. at 160.

So, "[f]or over a hundred years," *Ex parte Young* has allowed plaintiffs to sue state officers—regardless of Eleventh Amendment sovereign immunity—to enjoin future actions on behalf of the state if those actions would violate the federal constitution. *Nabors*, 35 F.4th at 1040. "In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit,

a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an *ongoing violation* of federal law and seeks relief properly characterized as *prospective*."[1] *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *accord Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013).

Here, Plaintiffs' requested injunctive relief is properly characterized as prospective. Plaintiffs request this Court enjoin Defendants, in their official capacities, from conducting "any further unannounced and unasked-for inspection(s)" which Plaintiffs contend violate the Fourth Amendment. ECF No. 1 at PageID.4. But Plaintiffs' Complaint does not plausibly allege an *ongoing* violation of federal law. This element of *Ex parte Young* overlaps with Article III standing. *Russell*, 784 F.3d at 1047. To allege an "ongoing violation of federal law" sufficient to invoke the *Ex parte Young* exception to Eleventh Amendment sovereign immunity, a plaintiff must allege a sufficiently "imminent and particularized" threat that the state-official defendants will enforce the challenged state policy or statute against Plaintiffs in the future. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015).

Plaintiffs have made no such showing here. Instead, Plaintiffs' five-page Complaint alleges only that Defendants "*conducted* a search of [their] [P]roperty *on April 11, 2024*" without a warrant or their consent. No. 1 at PageID.1–2 (emphasis added). Plaintiffs allege they

---

[1] Separate from this "straightforward inquiry," the state official defendant must have a sufficiently "special relation" or "connection" with the enforcement of the allegedly unconstitutional state statute or policy. *Ex parte Young*, 209 U.S. at 157. Otherwise, any private plaintiff could sue any state official for their "general" execution of any state law or policy, undermining the "fundamental principle" of Eleventh Amendment state sovereign immunity. *Id.* Here, both EGLE employee Defendants concede that, in their roles as state officials, they regularly inspect properties for compliance with the NREPA. *See* ECF Nos. 7-2 at PageID.59; 7-3 at PageID.67. So this "special relation" is satisfied.

"*experienced* harm" because Defendants "*violated*" the Fourth Amendment. *Id.* at PageID.3 (emphasis added). Yet Plaintiffs do not allege they will continue to experience this harm. *See generally id.*

In support of their Motion to Dismiss, Defendants submitted sworn affidavits suggesting that EGLE employees regularly respond to citizen NREPA complaints by conducting warrantless "inspections"[2] of challenged properties. *See* ECF Nos. 7-2 at PageID.60; 7-3 at PageID.66–67. But this Court cannot consider Defendants' affidavits at this motion-to-dismiss stage. *Berry v. United States Dep't of Lab.*, 832 F.3d 627, 637 (6th Cir. 2016) (explaining that courts can only consider materials outside the four corners of the complaint "if they are referred to in the complaint and central to [a] claim"). And, even if this Court could consider these affidavits and the routine nature of EGLE's allegedly warrantless inspections in response to citizen complaints, nothing suggests *Plaintiffs' Property*, specifically, will again be "inspected" in response to another NREPA complaint. Indeed, the documents attached to Plaintiffs' Complaint suggest the opposite. ECF No. 1-1 at PageID.6 (finding no NREPA violations on Plaintiffs' Property); *see also* ECF No. 1 at PageID.2 (alleging the inspection "confirmed there were no violations" of the NREPA on Plaintiffs' Property).

At best, Plaintiffs sufficiently allege a *possibility* that their Property will be subject to another warrantless inspection. But this is not enough. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("Thus, we have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." (emphasis in original) (cleaned up)); *accord Kanuszewski v. Michigan Dep't of Health*

---

[2] As explained *infra* Section III, discovery is needed to determine whether these inspections— which Defendants content do not involve entering the subject Property—violate the Fourth Amendment.

& *Hum. Servs*., 927 F.3d 396, 405 (6th Cir. 2019*)* As the Sixth Circuit has emphasized, the *Ex parte Young* exception only applies "when there is a realistic possibility that the [state] official [defendants] will take legal or administrative action against the plaintiff's interests" in the future. *Russell*, 784 F.3d 1037, 1048 (6th Cir. 2015). The scant facts alleged in Plaintiffs' Complaint reveal no realistic probability.

In sum, the Eleventh Amendment precludes this Court's jurisdiction to consider Plaintiffs' official-capacity claims, to the extent Plaintiff seeks monetary damages and retroactive injunctive relief. *See* ECF No. 1 at PageID.4–5. Although Plaintiff also seeks prospective injunctive relief, the doctrine of *Ex parte Young* does not save their official-capacity claims because Plaintiffs do not allege they are subject to ongoing Fourth Amendment violations. Indeed, for this very reason, Plaintiffs lack Article III standing to obtain prospective injunctive relief against Defendants in their *individual* capacities, too.[3] *See Kanuszewski*, 927 F.3d at 406 ("[T]he fact that a harm occurred in the past does nothing to establish a real and immediate treat that it will occur in the future, as is required for injunctive relief." (internal quotations omitted)). So Plaintiffs' official-capacity claims will be dismissed for lack of jurisdiction. And to the extent Plaintiff seeks prospective injunctive relief against Defendants in their individual capacities, those claims will also be dismissed for lack of standing.[4]

---

[3] Although not briefed by the Parties, the Court can raise the issue of Article III standing *sua sponte*. *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 983 (6th Cir. 2012).
[4] For clarity, this dismissal does not apply to Plaintiffs requested declaratory relief or requested injunction ordering Defendants to destroy any "notes, records, photographs, and/or any other catalogued information" they may have taken during the alleged April 11, 2024 inspection. *See* ECF No. 1 at PageID.4–5.

### III.

Although Defendants concede this Court has jurisdiction to consider Plaintiffs' *individual* capacity claims, they argue such claims should be dismissed under Civil Rule 12(b)(6) and, alternatively, that they are entitled to qualified immunity. *See generally* ECF No. 7. Not so. Plaintiffs Complaint contains enough facts—assumed true—to state a valid claim that Defendants violated the Fourth Amendment in their individual capacities. And this Court cannot assess Defendants' entitlement to qualified immunity before the Parties engage in factual discovery.

### A.

Under Civil Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) dismissal, the court accepts all factual allegations of the complaint as true and will construe the pleading in favor of the nonmovant. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept the complaint's legal conclusions as true. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

### B.

Some Fourth Amendment background is necessary to understand the propriety of Plaintiffs' pleadings. The Fourth Amendment protects against "unreasonable searches and seizures." U.S. CONST. amend. IV. Logically, Courts ask two questions when assessing an alleged

Fourth Amendment violation: (1) "whether the alleged government conduct constitutes a search within the meaning of the Fourth Amendment," and, if so (2) "whether the search was reasonable." *Mockeridge v. Alcona Cnty. by Bd. of Commissioners*, 696 F. Supp. 3d 303, 333 (E.D. Mich. 2023) (citing *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019).

But the Sixth Circuit has explained that "searches" can take two forms. *Id.* "Under the most prevalent and widely-used search analysis articulated in *Katz v. United States*, a search occurs when a government official invades an area in which 'a person has a constitutionally protected reasonable expectation of privacy.'" *Taylor*, 922 F.3d at 332 (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring) (internal citations omitted)). Under *Katz*, a search is analyzed in two parts: "first that a person exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Id.* (quoting *Katz*, 389 U.S. at 361).

"In recent years, however, the Supreme Court revisited the seldom used 'property-based' approach to the Fourth Amendment search inquiry in *United States v. Jones*. Under *Jones*, when governmental invasions are accompanied by physical intrusions, a search occurs when the government (1) trespasses upon a constitutionally protected area, (2) to obtain information." *Id.* (citing *United States v. Jones*, 565 U.S. 400, 404–05 (2012)). *Jones* clarified that the "*Katz* reasonable-expectation-of-privacy test has been *added to*, but not *substituted for*, the common-law trespassory test." *Jones*, 565 U.S. at 409 (emphasis in original).

## C.

Plaintiffs pleaded a valid Fourth Amendment claim against Defendants in their individual capacities. First, they sufficiently pleaded a "search" under both the *Katz* and *Jones* frameworks. Under *Katz*, Plaintiffs plausibly had a reasonable expectation of privacy in the portions of the

- 13 -

Property that were "inspected" on April 11, 2024. According to the map attached to their Complaint—properly considered throughout Rule 12(b)(6) review—the Property included multiple buildings resembling homes or other closed-off habitable structures.[5] *See* ECF No. 1-1 at PageID.8; *see also Fla. v. Jardines*, 569 U.S. 1, 6 (2013) (explaining the home and the immediately surrounding "curtilage" are at the core of the Fourth Amendment's protections against unreasonable searches). And, under *Jones*, Defendants searched Plaintiffs' Property by "descend[ing]" on it to obtain information about Plaintiffs' compliance with the NREPA. *See* ECF Nos. 1 at PageID.2; 1-1 at PageID.6–7.

Plaintiffs also plausibly allege Defendants' April 11, 2024 search was unreasonable, in violation of the Fourth Amendment. Warrantless searches are "per se unreasonable," "subject to only a few specifically established and well-delineated exceptions." *Katz*, 389 U.S. at 357. But Plaintiffs allege the search occurred without a warrant or their consent.  ECF No. 1 at PageID.3. Nothing more is required, at this juncture, to state a viable Fourth Amendment claim against Defendants in their individual capacities.

Yet Defendants additionally argue that (1) they never "searched" Plaintiffs' Property during the April 11, 2024 inspection, (2) if they did, an exception to the warrant requirement applies, and (3) they are otherwise entitled to qualified immunity. *See* ECF No. 7 at PageID.42–

---

[5] Discovery is necessary to determine *what* portions of Plaintiffs' Property Defendants specifically inspected or observed because Plaintiffs would *not* have a reasonable expectation of privacy in any "unoccupied or undeveloped" part of their Property "outside of the curtilage," *see Mockeridge v. Alcona Cnty. by Bd. of Commissioners*, 696 F. Supp. 3d 303, 329 (E.D. Mich. 2023) (explaining the "open fields doctrine"). But all inferences must be drawn in Plaintiffs' favor at this stage, and the facts alleged in their Complaint—read in a favorable light—do not suggest Defendants' April 11 "inspection" was limited to only these constitutionally unprotected parts of Plaintiff's Property. And the map of Plaintiffs' Property—attached to the Complaint—reflects that some of the relevant wetlands Defendants were inspecting for NREPA compliance were far removed from the nearest publicly accessible road and surrounded by houses or other developed buildings on Plaintiff's Property. *See* ECF No. 1-1 at PageID.8.

45, 48–50. But this three-tiered house of cards rests on a faulty foundation. Defendants premise all arguments on their own affidavits, in which they swear they never *physically* entered Plaintiffs' Property during the April 11, 2024 inspection and, instead, walked along the perimeter of Plaintiff's Property observing only what any other member of the public would see. ECF No. 7 at PageID.37 (referring to ECF Nos. 7-2; 7-3). But this Court cannot consider Defendants' self-serving affidavits at this motion to dismiss stage.[6] *Berry v. United States Dep't of Lab.*, 832 F.3d 627, 637 (6th Cir. 2016).

And, even if this Court *could* consider Defendants' affidavits, they do not undermine the adequacy of Plaintiffs' pleadings or warrant dismissal. For starters, all arguments premised on Defendants' contention of the facts, *see* ECF No. 7 at PageID.43–44, sound in summary judgment and are premature at this motion-to-dismiss stage which is limited to assessing the adequacy of Plaintiff's allegations. Moreover, although Defendants repeatedly emphasize that they never physically entered *Plaintiffs'* Property, both acknowledge they "cross[ed] a *neighboring* property," initially inspected Plaintiffs' Property for NREPA compliance "wholly on th[is] neighboring property," and then physically entered a "field owned Bay View Food Products" to continue their inspection. ECF Nos. 7-3 at PageID.68. Under *Katz*, Plaintiffs may have had a reasonable expectation of privacy in the portions of their Property that were only observable from private, ordinarily inaccessible neighboring properties rather than the "plain public view." *See Kyllo v. United States*, 533 U.S. 27, 32–34 (2001) (noting visual observations of property "in the plain

---

[6] Defendants seemingly suggest that the affidavits they attached to their motion to dismiss are "publicly available evidence" that may be considered at this motion to dismiss stage. *See* ECF No. 7 at PageID.43. They are not. *See Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 884 (6th Cir. 2023) (distinguishing affidavits from public records, noting affidavits "do[] not fall into any of the categories of information which[] district court[s] may consider in addition to the pleadings in reviewing a motion to dismiss").

public view" are not Fourth Amendment searches). True, the Supreme Court has held that government officials do not "search" a property for Fourth Amendment purposes by making mere naked-eye observations of the property "from a public vantage point where [the officials] ha[ve] a right to be[.]" *California v. Ciraolo*, 476 U.S. 207, 213 (1986); *accord Fla. v. Riley*, 488 U.S. 445, 449 (1989). But Defendants' own descriptions of the April 11, 2024 "inspection" do not suggest they observed Plaintiffs' Property "from a public vantage point" nor that they had a "right" to be on either of the neighboring private properties in the first instance.

At bottom, Plaintiffs have adequately alleged Defendants—in their individual capacities—violated the Fourth Amendment by "inspecting" Plaintiffs' Property on April 11, 2024, without a warrant or their consent. So, Defendants' Motion to Dismiss will be denied to the extent it seeks dismissal of Plaintiffs' individual capacity Fourth Amendment claims (Count I).

**IV.**

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 7, is **GRANTED IN PART**, to the extent (1) it seeks dismissal of Plaintiffs' state claims (Counts II and III) and (2) to the extent it seeks dismissal of Plaintiffs' Fourth Amendment official capacity claims (Count I).

Further, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 7, is **DENIED IN PART**, to the extent it seeks dismissal of Plaintiffs' Fourth Amendment individual capacity claims (Count I).

Further, it is **ORDERED** that Plaintiffs' state-law claims, Counts II and III, are **DISMISSED WITHOUT PREJUDICE.**

Further, it is **ORDERED** that Plaintiffs' federal official capacity claims, Count I, are **DISMISSED** for lack of jurisdiction.

Further, it is **ORDERED** that, to the extent Plaintiffs seek prospective relief against Defendants in their individual capacities on Count I, Plaintiffs' requests for prospective injunctive relief are *sua sponte* **DISMISSED** for lack of Article III standing.

**This is not a final order and does not close the above-captioned case.**

Dated: March 12, 2025                                    s/Thomas L. Ludington
                                                          THOMAS L. LUDINGTON
                                                          United States District Judge